# In the United States Court of Federal Claims

No. 23-211

(Filed: May 22, 2025)

```
*************************************
NICHOLAS BASSEN, et al.,            *
                                    *
              Plaintiffs,           *
                                    *
     v.                             *
                                    *
THE UNITED STATES,                  *
                                    *
              Defendant.            *
*************************************
```

*Dale F. Saran*, Dale F. Saran, LLC, Olathe, KS, counsel for Plaintiff. With whom were *Brandon Johnson*, and *J. Andrew Meyer*, St. Petersburg, FL, and *Barry Steinberg*, Kutak Rock LLP, Washington, DC.

*Kyle S. Beckrich*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant.

## OPINION AND ORDER

**DIETZ, Judge.**

The plaintiffs, ten current and former active-duty service members and reservists in the United States Army, Air Force, and Marine Corps,[1] allege that they suffered adverse personnel action due to their failure to comply with the COVID-19 vaccine mandate issued by the Secretary of Defense. In a class action complaint, they sued the United States seeking reinstatement, backpay, and other relief. Before the Court is the government's motion for a voluntary remand to the Army Board for Correction of Military Records, Air Force Board for Correction of Military Records, and Board for Correction of Naval Records (collectively, "Military Boards") and a stay of proceedings. For the reasons stated below, the Court **GRANTS** the government's motion.

## I.   BACKGROUND

Secretary of Defense Lloyd J. Austin III issued a COVID-19 vaccine mandate on August

---

[1] The plaintiffs are Nicholas Bassen, Isaac Dailey, Kyle Davis, Billie Endress, Andrew Merjil, Derrick Wynne, Paul Rodriguez, Brent Chisholm, Allen Hall, and Hunter Springer. *See* [ECF 63] at 1 n.1.

24, 2021. [ECF 1-2] at 2-3.[2] Therein, he directed the Secretaries of the various military branches to begin vaccinating their active duty and reserve members, including the National Guard, using COVID-19 vaccines that receive full licensure from the Food and Drug Administration. *Id.* at 2. Each military branch subsequently issued its own mandate. *See* [ECF 1-4] (Air Force mandate); [ECF 1-5] (Army mandate); [ECF 1-6] (Marine Corps mandate); [ECF 1-7] (Navy mandate).

In December 2021, Congress enacted the National Defense Authorization Act ("NDAA") for Fiscal Year 2022. Pub. L. No. 117-81 (2021) ("2022 NDAA"). Section 736 of the 2022 NDAA provided that any covered active-duty and reserve service members who failed to comply with the mandate would receive only "an honorable discharge" or "a general discharge under honorable conditions." *Id.* § 736. In December 2022, Congress enacted the NDAA for Fiscal Year 2023. Pub. L. No. 117-263 (2022) ("2023 NDAA"). Section 525 of the 2023 NDAA directed the Secretary of Defense to rescind the mandate. *Id.* § 525. Shortly thereafter, on January 10, 2023, Secretary Austin rescinded the mandate. [ECF 1-3]. He stated: "No individuals currently serving in the Armed Forces shall be separated solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious, administrative, or medical grounds." *Id.* at 2. He further stated: "For Service members administratively discharged on the sole basis that the Service member failed to obey a lawful order to receive a vaccine for COVID-19, the Department is precluded by law from awarding any characterization less than a general (under honorable conditions) discharge." *Id.* at 3. Following Secretary Austin's recission of the mandate, the Department of Defense ("DoD") issued guidelines for implementing the policy change, [ECF 22] at 39-40 (Feb. 24, 2023, DoD Memo), and each branch of the military issued its own directive for implementing the rescission, *id.* at 41-46 (Feb. 24, 2023, Army Memo); *id.* at 47-49 (Feb. 24, 2023, Air Force Memo); *id.* at 50-51 (Feb. 24, 2023, Navy Memo).

On February 13, 2023, six plaintiffs filed the instant class action. [ECF 1]. Thereafter, the plaintiffs filed a first amended complaint, adding four additional plaintiffs. [ECF 21]. The plaintiffs are current and former active-duty service members and reservists in the Army, Air Force, and Marine Corps. *Id.* ¶¶ 16-25. In the amended complaint, they assert violations of the 2023 NDAA, violations of the Emergency Use Product Act (10 U.S.C. § 1107a), violations of the Religious Freedom Restoration Act (42 U.S.C. § 2000bb-1), an illegal exaction, and a request for correction of military records. *Id.* ¶¶ 171-249. The plaintiffs seek money damages, reinstatement, correction of military records, and other appropriate relief. *Id.* ¶¶ 250-57.

On August 25, 2023, the government moved to dismiss the amended complaint under RCFC 12(b)(1) and 12(b)(6). [ECF 22]. On May 2, 2024, after a hearing, the Court granted-in-part and denied-in-part the government's motion. *Bassen v. United States*, 171 Fed. Cl. 273, 288 (2024). The Court dismissed the plaintiffs' claims for violation of the 2023 NDAA, illegal exaction, and correction of military records, and allowed some of the plaintiffs' other claims to proceed. *Id.* at 278-79. The government then filed the Administrative Record. [ECF 37]. Thereafter, the parties filed cross-motions for judgment on the administrative record, which were

---

[2] The operative complaint is the First Amended Class Action Complaint filed on August 4, 2023. First Am. Class Action Compl. [ECF 21]. Because the plaintiffs continue to reference the exhibits attached to the original complaint, Class Action Compl. [ECF 1], the Court also cites to the exhibits attached thereto. Additionally, all page numbers cited in the parties' filings refer to the page numbers generated by the CM/ECF system.

fully briefed as of December 17, 2024. *See* [ECFs 43, 50, 53, 56].

On January 27, 2025, President of the United States Donald J. Trump issued Executive Order 14184, Reinstating Service Members Discharged Under the Military's COVID–19 Vaccination Mandate ("EO"). 90 Fed. Reg. 8761 (Jan. 27, 2025). Section two of the EO states:

> [T]he Secretary of Defense . . . shall take all necessary action permitted by law to:
>
> (a) make reinstatement available to all members of the military (active and reserve) who were discharged solely for refusal to receive the COVID-19 vaccine and who request to be reinstated;
>
> (b) enable those service members reinstated under this section to revert to their former rank and receive full back pay, benefits, bonus payments, or compensation; and
>
> (c) allow any service members who provide a written and sworn attestation that they voluntarily left the service or allowed their service to lapse according to appropriate procedures, rather than be vaccinated under the vaccine mandate, to return to service with no impact on their service status, rank, or pay.

*Id.* at 8761. Thereafter, on January 29, 2025, the government filed a motion to stay proceedings in the case for a period of sixty days while the DoD determined how to implement the EO. [ECF 57]. The Court granted the government's motion to stay. [ECF 60].

Shortly before the Court issued the stay, on February 7, 2025, the DoD issued guidelines that provided procedures "by which the Secretaries of the Military Departments will process reinstatements for individuals either involuntarily discharged or those who voluntary left the service or allowed their service to lapse, rather than be vaccinated under the vaccine mandate." [ECF 61-1] at 1-11 (Feb. 7, 2025, DoD Memo). The DoD issued additional guidance on April 23, 2025, "to take care of the thousands of Service members who were unjustly impacted by the COVID-19 vaccine mandate." [ECF 67-1] at 1 (Apr. 23, 2025, DoD Memo). In the additional guidance, the DoD explained:

> This guidance will facilitate, as appropriate, the removal of adverse actions based solely on refusal to take the COVID-19 vaccine (or requesting a medical or religious/administrative accommodation), discharge upgrades for individuals involuntarily separated solely for refusing to take the COVID-19 vaccine whose service was characterized as less than fully honorable, and appropriate remedies for Service members who suffered a wide variety of other career setbacks resulting from their principled refusal to take the COVID-19 vaccine.

*Id.* On April 8, 2025, the government filed a motion for a voluntary remand and a continued stay of the case. [ECF 63]. The motion is fully briefed, *see* [ECFs 64, 65], and the Court determined that a hearing was neither needed nor in the interest of judicial efficiency.

## II.   DISCUSSION

The government requests a remand "to the relevant [Military Boards] due to intervening events that may affect the validity of the agency actions at issue in this case." [ECF 63] at 6. The government points to the President's January 27, 2025, EO, as well as a recent decision issued in a similar case, *Harkins v. United States*, 174 Fed. Cl. 592 (2025). *Id.* The plaintiffs contend that the EO is not "an intervening event outside of the agency's control" because the actions of the President and the Secretary of Defense are both actions of the Executive Branch. [ECF 64] at 21-22. Further, the plaintiffs counter that the *Harkins* decision is not a "new legal decision" because it is not binding on the parties. *Id.* at 20-21. The Court finds that the EO qualifies as an intervening event and that, therefore, a remand is not only appropriate but required.[3]

Under the Tucker Act, the Court has the authority "to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2). Remand may be directed on motion filed by one or more parties or *sua sponte*. *See* RCFC 52.2(a). In *SKF USA Inc. v. United States*, the United States Court of Appeals for the Federal Circuit identified five positions that an agency may take when its action is reviewed by the court:

> First, it may choose to defend the agency's decision on the grounds previously articulated by the agency. Second, it may seek to defend the agency's decision on grounds *not* previously articulated by the agency. Third, the agency may seek a remand to reconsider its decision because of intervening events outside of the agency's

---

[3] The Court agrees with the plaintiffs that the *Harkins* decision does not qualify as an intervening event. *See* [ECF 63] at 6. Although the *Harkins* decision is significant in that it details another judge's handling of a similar case, it is unclear how the decision might affect the validity of the plaintiffs' claims in this case. Further, the conclusion that the *Harkins* decision does not qualify as an intervening event is supported by the three cases cited by the Federal Circuit in *SKF USA Inc. v. United States*. *See* 254 F.3d 1022, 1028-29 (Fed. Cir. 2001). In the first case, the Supreme Court held that a remand was appropriate due to "a new statutory interpretation [of a federal law] that [would] apparently be applied, and [would] probably be entitled to deference, in future cases nationwide." *Lawrence ex. rel. Lawrence v. Chater*, 516 U.S. 163, 174 (1996). In the second case, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") granted an agency's request for a remand following the agency's new interpretation of a particular clause within a settlement agreement. *Nat'l Fuel Gas Supply Corp. v. FERC*, 899 F.2d 1244, 1249 (D.C. Cir. 1990). In so doing, the D.C. Circuit noted not only that the agency's construction of the agreement was due "broad deference," but also that its interpretation of the settlement agreement implicated both its "superior knowledge of industry conditions and practices, . . . [and its] exercise of its congressionally delegated powers." *Id.* (internal citations and quotation marks omitted). In the third case, the D.C. Circuit granted the agency's request for a remand following the development of new evidence that undermined the agency's previous denial of the plaintiff's requested relief. *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993). The court noted that it "commonly grant[s] such motions, preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Id.* at 524. In all three cases, the effect of the event at issue on the litigants was direct and inescapable, whereas in the instant case, the effect of the *Harkins* decision is indirect, not highly likely or mandatory. Therefore, the *Harkins* decision does not qualify as an intervening event that supports a remand.

4

> control. Fourth, even in the absence of intervening events, the agency may request a remand, without confessing error, to reconsider its previous position. Finally, as in the present situation, the agency may request a remand because it believes that its original decision was incorrect on the merits and it wishes to change the result.

254 F.3d 1022, 1028 (Fed. Cir. 2001) (emphasis in the original). In the third situation, an "agency may seek a remand because of intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation." *Id.* When an agency makes such a request, "[a] remand is generally required if the intervening event may affect the validity of the agency action." *Id.* However, a "remand is not appropriate in all circumstances and the Court should only grant such a motion after serious consideration." *Trace Sys., Inc. v. United States*, No. 22-404, 2022 WL 2963486, at *2 (Fed. Cl. July 26, 2022) (citing *Rahman v. United States*, 149 Fed. Cl. 685, 690 (2020)).

The EO is an intervening event that requires a remand.[4] There is no question that the EO may affect the validity of the Army, Air Force, and Marine Corps actions at issue in this case because the EO invalidates the very same DoD policy that the plaintiffs challenge in their amended complaint. The EO begins with a broad policy statement:

> On August 24, 2021, the Secretary of Defense mandated that all service members receive the COVID-19 vaccine. The Secretary of Defense later rescinded the mandate on January 10, 2023. The vaccine mandate was an unfair, overbroad, and completely unnecessary burden on our service members. Further, the military unjustly discharged those who refused the vaccine, regardless of the years of service given to our Nation, after failing to grant many of them an exemption that they should have received. Federal Government redress of any wrongful dismissals is overdue.

90 Fed. Reg. at 8761. Next, the EO instructs the Secretary of Defense to make relief options available to service members who were wrongfully discharged. Specifically, it instructs the Secretary of Defense to "make reinstatement available" to service members, to enable reinstated service members "to revert to their former rank and receive full back pay, benefits, bonus payments, or compensation," and to allow service members "to return to service with no impact on their service status, rank, or pay." *Id.* In other words, through the EO, the President not only acknowledged that certain members of the military may have been "unjustly discharged," but

---

[4] Even if the EO were not viewed as an intervening event under the third *SKF* scenario, the Court would find that a remand is appropriate under the fourth *SKF* scenario, whereby "the agency may request a remand (without confessing error) in order to reconsider its previous position." *SKF USA Inc.*, 254 F.3d at 1029; *see also Rahman*, 149 Fed. Cl. at 691 (stating that allowing the agency an opportunity to review its decision and correct a potential error is "preferred over judicial intervention, which is most appropriate when an agency refuses to correct a substantive or procedural error"). Under this scenario, "the reviewing court has discretion over whether to remand," and usually does so when the "agency's concern is substantial and legitimate." *SKF USA Inc.*, 254 F.3d at 1029. Here, in seeking a remand, the government has identified a substantial and legitimate concern—the need to take corrective action in accordance with the EO and subsequent DoD guidance. *See* [ECF 63] at 6.

5

also outlined reinstatement procedures, which included the payment of back pay, benefits, bonus payments, or compensation. *Id.* These circumstances warrant a remand.[5]

Moreover, a remand affords the plaintiffs the possibility of obtaining the relief they seek in their amended complaint. Regarding those service members who seek reinstatement and its attendant benefits, the DoD directs the Military Boards to "give priority consideration to these applications." [ECF 61-1] at 10. The DoD further provides as follows:

> In cases where the Service member was involuntarily separated, the BCM/NRs should exercise their broad discretion to order all appropriate retroactive corrections of the Service member's record and should normally grant requests to correct the record to reflect continued service with no separation (i.e., reinstatement with no break in service), restoration of the Service member's previous grade and rank (normally the grade and rank held immediately prior to separation unless the Service member's pay grade was reduced prior to separation for misconduct relating solely to refusal to comply with the vaccination requirement), and credit for lost service time due to separation or credit for qualifying years of service for a non-regular retirement (i.e., credit for 50 retirement non-pay points), as appropriate and consistent with applicable laws.

*Id.*[6] Regarding those service members who do not seek reinstatement, the DoD advises that they "are still encouraged to apply to the BCM/NRs for alternate and appropriate relief, e.g., removal of negative documentation or revision of their discharge terms, such as characterization of service." *Id.* at 11.

Lastly, a remand will serve a useful purpose and will not unduly prejudice the plaintiffs. While the plaintiffs argue that the proposed remand procedures "would . . . unduly prejudice Plaintiffs by indefinitely delaying judicial review of Defendant's admittedly unlawful actions," [ECF 64] at 35, the Court is not persuaded. Indeed, the proposed remand may allow the plaintiffs to receive all the relief they seek without the need for further judicial proceedings. *See* 10 U.S.C. § 1552. If the various Military Boards determine that relief is warranted, they will be able to simultaneously correct affected military personnel records and coordinate with the appropriate agencies to provide the requisite monetary relief. *See Wolfing v. United States*, 163 Fed. Cl. 135, 152 (2022). Thus, a remand could lead to a more expeditious resolution of the plaintiffs' grievances. With respect to the inconvenience posed by the application process, the regulations

---

[5] The plaintiffs argue that the EO is not an intervening event because it is not outside of the control of the Army, Air Force, and Marine Corps. [ECF 64] at 21-22. While the President, as head of the Executive Branch, is in control of the various military branches, the reverse is not true. The Army, Air Force, and Marine Corps do not control the President's actions. Thus, for the purpose of determining whether a remand is appropriate in this case under the third scenario of *SKF USA Inc.*, the Court finds that the actions of the President are "outside of the agency's control." *SKF USA Inc.*, 254 F.3d at 1028.

[6] The DoD also provides guidance for those members who seek "a records correction on an additional basis (i.e., not exclusively on an unjust separation due to the COVID-19 mandate) or requests a medical separation or retirement." [ECF 61-1] at 11.

call for an application for correction to be submitted to initiate Military Board proceedings. *See, e.g.*, 32 C.F.R. § 723.3(a) (Application for Correction of Naval Records). The Court is not inclined to interfere with these routine processes.[7] That the plaintiffs have the right to bring their claims in this Court does not eliminate the possibility that the Court may still decide that a remand is appropriate. *See Antonellis v. United States*, 723 F.3d 1328, 1333 (Fed. Cir. 2013) (citing *Heisig v. United States*, 719 F.2d 1153, 1155 (Fed. Cir. 1983); *Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003)) ("Although there is generally no requirement that a plaintiff exhaust remedies with the applicable Corrections Board before filing suit in the Claims Court, . . . these cases normally still proceed through the Corrections Board because [t]ypically, if suit is filed just in the [Claims Court], that court will require resort to a Corrections Board while the matter remains pending in that court." (internal citations and quotation marks omitted)). Ultimately, if the plaintiffs are not afforded the relief that they seek on remand, this Court will be positioned to provide judicial review.

## VI. CONCLUSION

For the reasons stated above, the government's motion for a remand and a stay of proceedings, [ECF 63], is **GRANTED**. The parties **SHALL** meet and confer and submit joint proposed remand instructions **on or by June 6, 2025**.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge

---

[7] The plaintiffs argue that the government's motion to remand "is frivolous, if not made in bad faith." [ECF 64] at 32 (capitalization omitted). However, the government's motion was made following the occurrence of an intervening event that may affect the validity of the actions of the Army, Air Force, and Marine Corps. There is no evidence of bad faith by the government.